The next case on the call of the docket is Agenda No. 14, No. 126444 The Board of Education of Richland School District No. 88A v. City of Crest Hill Mr. Foster Thank you members of the Supreme Court. My name is Scott Hoster and I am from Joliet and I represent the City of Crest Hill. Unfortunately my co-counsel Mary Reardon from Chicago who put in an extremely great effort on this case has come down with some migraines and she was unable to make it down but she put in a great deal of work on this case. And I just want to say it was an honor to work with her in this litigation. The City of Crest Hill annexed the property that is the subject matter of this litigation in 2000 and 2002. And in doing so they followed the body of annexation law which says you can jump a road, a river, forest preserve, a pipeline and they did that. They jumped the public utility gas pipeline which is the subject of this case. They did this in 2000 and 2002 and municipalities grow through annexation and there's always optimism when you annex some property that it's going to develop, it's going to produce more tax dollars for the municipality. It didn't. And so the City of Crest Hill then turned to one of several available legislative tools to help property develop which is TIF and that's the TIF statute. Mary Reardon, my co-counsel, was the attorney that did all of the work on this. The City of Crest Hill hired her and she designed the TIF district with a respected land planning company called Cameros. And basically this property has been in the City of Crest Hill for 20 some years. And so they did the same thing in the TIF district that they did when they annexed. They jumped the 234 feet of public right-of-way and made that a part of their TIF district. We thought that's appropriate. We argued that before Judge Anderson in Will County when the Richland School District filed suit to declare the TIFs invalid. Many other TIF districts throughout the state have done the same thing. We attached to our brief what the City of Chicago has done with their TIFs. They've jumped the Chicago River. They've jumped the Skyway. They've jumped the Kennedy. So municipalities all over the State of Illinois have relied on the ability in a TIF to jump a public utility right-of-way. Counsel, if you can help me a little bit. After reading Justice Holdridge's writing, is there more land in the excluded area besides the utility easement? Justice Holdridge's concurrence basically stated that since the public utility is technically private-owned, I mean, you know, the gas companies that put these utilities in are not owned by the State of Illinois. They're owned by private companies. And we dealt with that in our brief that a public utility is a public utility because it serves the public, but it's really owned by a private company. Justice Holdridge's concurrence objected to the fact that we jumped it because he said that property is owned in fee simple by another party. And you can't involuntarily annex somebody. And he felt we were involuntarily annexing the gas pipeline by jumping it. I mean, we're not. It's not part of the TIF. You just jump it. But he, Justice Holdridge, yeah, I mean, you know him. I mean, he has very libertarian leanings and felt very strongly that we were depriving this private property owner of their property rights. I was just concerned that there was some property that I thought it was only the easement, but then I was. Well, we jumped the 200. There's 234 feet, .9 feet. And we jumped that. And that is owned by the public gas company that runs the right-of-way. But if I was Karl Rove, and I'm not, I think he's the guy from President Bush that always had the board, you know. I would write up here, contiguity for annexation purposes equals contiguity for TIF. That would be my message. Counsel, the statutes, the TIF statute does not mirror the language of the annexation statute, does it? That's correct, sir. You're absolutely correct. And here's our response to that. I mean, in 1977, the second district decided Westcom. That's an annexation case. And they said under annexation law, you can jump a public right-of-way. The fifth district in 1978 in the Freeport case said for annexation, you can jump a public utility right-of-way. The legislature came in and amended the Annexation Act in 1980 and said you can jump a railroad right-of-way. And in 1985, the legislature came back again and said you can jump a public utility right-of-way for annexation. In 1996, our third district decided the Henry County case. And the Henry County case, we've quoted it extensively. It says, for purposes of contiguity, we believe the definition of annexation for the definition of contiguity in annexation law is more than adequate to cover the definition of contiguity for TIF. So that was in 1996. And then in 2008, the fifth district decided a case called Geisler. That dealt with another property development statute, the Business District Development Act, which is a similar tool to TIF. And the fifth district in 2008 said you can jump a road in order to get contiguity. So I would agree with you, Justice. There is no question the TIF Act does not have the same language in it that the Annexation Act does. But the Business Development District Act doesn't have that language in it either. And the fifth district in Geisler said you can jump a road just like you can in annexation law. I think our friends at the Municipal League who filed an amicus brief struck a very good point in this case. They said the following, and they quoted this Court, the Illinois Supreme Court, in the Knowles-Condo case in 2002. It said where two or more statutes relate to the same subject matter, they should be read in harmony. The Annexation Act, the TIF Act, and the Business Development Act are all part of the municipal code. And so we would contend the logic of this is if a city is going to try to get bigger, they're going to annex property. And that's the most important thing. So they've annexed the property. It does say in the Annexation Act you can jump the public utility right away. After you've done that, why would you then use a different definition of contiguity for the TIF Act or the Business Development Act and say, well, we're going to make it more restrictive for these other two parts of the same municipal code? So why is it necessary then for the TIF Act to explicitly allow for revenue sharing between two separate TIF districts that are separated by revenue? The legislature did include the language when it talked about sharing revenues. I can't dispute that, Justice. It's there. But so isn't there some window into legislative intent on this? Well, I don't know that it is. They specifically the purpose there was to talk about two TIF districts sharing money. And they said we don't want you to be prohibited from sharing money if the TIF districts are separated by a public utility or something to that effect. So there you've got two separate TIF districts. And they said we don't want any misunderstanding. If there's a river that runs through the two separate TIF districts, you can jump the river and the two TIF districts can share revenue. That is there. It's there in the statute. There's no question about that, Justice. But our position on this, as I said, is basically they put it in the Annexation Act, and there's no real reason when you've got three different components of the municipal code to have different definitions of contiguity. That would just create confusion. And it shouldn't be more restrictive for TIF and for the business district development statute than it would be for annexation. So the second prong of this, the third district didn't deal with this issue. We both briefed it, and we are hoping you'll decide it so we don't go back to the third district. But there was an issue about the work of the Joint Review Board. That's been briefed pretty thoroughly. The meeting was held. The Joint Review Board made its recommendation on November the 6th. Their objection to the TIF was basically that it would divert revenue away from the school district. Our position is that's the purpose of a TIF. And if, you know, you don't like that, then go to the legislature and get it changed. That was not a valid, in our view, reason for the Joint Review Board to say, we don't recommend the TIF just because it's going to take money away from the school district. And so the city of Crest Hill voted unanimously to approve these TIF districts. If the Joint Review Board objects, there has to be a three-fifths vote. The Joint Review Board did object. It was passed unanimously. The Joint Review Board is saying we didn't wait the 30 days. Crest Hill didn't wait the 30 days before they passed this to meet and confer. And our position on that was there was nothing to meet and confer about because Ms. Reardon reached out to the Joint Review Board and said, what are your objections? And the only objection they came up with is basically, we don't like it because it takes revenue away from the school. And she said, that's not a valid, there's nothing we can meet and confer about. And when I deposed Mr. Simpkins, the superintendent of the Richland schools, I asked him, what could the Joint Review Board have met and conferred about with the city of Crest Hill that would have satisfied you? And he said, entering into an intergovernmental revenue-sharing agreement. And, again, that's not part of the TIF. I mean, it doesn't deal with is the area blighted, does it need economic development, all the factors in the TIF. The Joint Review Board just didn't like it because it took money away from the Richland School District. But that's what TIF did. Wouldn't that be a typical objection, though? It's not a valid objection, Justice, because it doesn't, the TIF Act gives all the factors. Is the property blighted? Hasn't it been developed? And things of that nature. But the whole purpose of the TIF, you know, it's a given it's going to take money away from the schools because the tax money goes back to the developer. So with that, I would be completing my presentation. Members, if you have any questions. Any more questions? All right. Thank you very much, Justice. Thank you. I'm sorry, Mr. Rueggen, couldn't make it. I am, too. Thank you. Mr. Howard Charles Jablocki. Good morning, Your Honors, and may it please the Court. My name is Howard Jablocki. I represent the appellee of the Board of Education for Richland School District 88A in this matter. Your Honors, municipalities operate under rules, rules and procedures that are set forth by the Illinois legislature, rules on how they conduct their meetings, rules on how they pass ordinances, rules on how they approve tax levies. Similarly, the Illinois legislature has established rules and procedures that give municipalities the ability to create TIF districts. But that authority is not without limits. There are certain requirements that must be present and certain procedures that must be followed. Those requirements and those procedures, they're not cursory, they're not optional, they're mandatory. And without meeting those procedures and rules, a TIF district cannot be properly established. And here, what we have is the City of Crest Hill establishing a TIF district and ignoring statutory requirements and procedures necessary to properly form such a TIF district. Instead of following those rules, instead of following the statutory procedures laid out by the legislature, they come before you today seeking to employ the old adage of let's ask for forgiveness instead of permission. And because they didn't follow those rules, they came up with some creative arguments to seek forgiveness, but their failure to follow the rules in the first place is the downfall of the TIF district in general. Unforgivable. Yes, it is. It is, Your Honor. So this case asks the court to look at a simple question. Should the city be able to benefit from their failure to follow the rules? And the answer clearly should be no. To get to that point, there are two main issues, as my colleague alluded to. The first and major issue that the appellate court focused on was the issue of contiguity, and we'll get into that in a minute. The second is whether the procedures before the joint review board were properly followed. So turning to contiguity, the first thing I want to mention, there was a question about we have this large parcel of excluded property in the middle of the TIF district. It essentially splits it in half. It's not just the right-of-way. There's a much larger portion, and if you look at the TIF map that the appellate court had in its opinion or that you can find on the city's website outlining their TIF district, it's a large portion that cuts the TIF district in half. It's unincorporated property. It's not included in the TIF district. It's expressly excluded from the TIF district. And that's where this problem arises. And it clearly undermines the contiguity that's required in order to properly form a TIF district. Now, as Your Honors talked about, there is no express definition of contiguity in the TIF Act. But what I do want to make clear, and counsel talks a lot, he talked a lot in the appellate court and the trial court, all about annexations, annexations, annexations, annexations. We're not here today to talk about annexations. We're talking about a TIF district. It's two separate statutory frameworks. It's two separate mechanisms under the Illinois law. But why shouldn't annexation law help inform the decision? Well, as the court in the Henry case indicated, it does help inform what that undefined term of contiguity is. And the court in Henry looked at, you know, what is the common law definition of contiguity that's informed by annexation cases. And that is that you need a reasonably substantial physical touching. And that's where the comparison to annexation ends. Because unlike how the city is trying to expand the definition to include exceptions that are included in the annexation statute and not in the TIF Act, that's something that the legislature didn't provide for. And if you look at the annexation statute itself, looking at the exceptions that the city expressly tries to import into the TIF context, the language says, for purposes of this article, meaning the annexation statute itself, the legislature limited those exceptions to annexations themselves, not to TIFs. And when looking at a TIF, and Your Honor properly mentioned that there are provisions in the TIF Act that talk about sharing revenues between two TIF districts that are separated by a right-of-way. Mr. Jabloki, have there been exceptions like the one that the city is asking for now? No, Your Honor. There haven't. And the attempt of the city to show other TIF districts throughout the State, which, again, was never raised in any lower court and was just brought before this court, but they're different. It's not the situation we're looking at here. Those are TIF districts that encompass right-of-ways, that encompass areas, rivers and railroads, but it doesn't exclude those areas from the TIF district. What we have in this case, in this TIF district, is a large privately owned right-of-way unincorporated, which can't be included in the TIF district, and is expressly excluded from the TIF district. And without that area that splits down the middle, there can be no contiguity. There's absolutely no way to connect the southeastern portion of the TIF to the northwestern portion of the TIF. And that's what the appellate court correctly realized, is that there is absolutely no contiguity under the definitions of contiguity as incorporated by the Henry Court. Can you help us understand, help me understand the statute in the sense of why would there be two different definitions? What are the policy reasons? Why is annexation so different from a TIF district? I think it's simple. It's looking at what's the purpose of those two different statutes to begin with. You look at annexations, it's for a municipality to grow, to incorporate unincorporated property into its corporate boundaries. When you have a TIF district, that's an exception, right? You're creating an area that's going to divert tax revenues from other taxing bodies. And so it should be construed more narrowly. And I think that's what the legislature intended when it didn't include those exceptions for contiguity that are contained in other, in the annexation statutes itself. You know, you're creating a specialized area in a municipality that diverts tax revenues in order to redevelop that specific area. So it shouldn't be construed as broadly as perhaps an annexation should be or is under the specific statutory language. And that's the important thing here. This whole issue, it's founded on legislative intent, on statutory interpretation. And to take one statute, as counsel suggests, and just impose it into another one, it just flies in the face of decades of statutory interpretation precedent. Should we consider the fact that it's there for redevelopment of blighted property? And if they don't have a TIF district, it's certainly going to make it more difficult to use that plan for anything meaningful, right? It's possible. But there's also nothing that would prevent them from forming a TIF district on one side of that right-of-way and a TIF district on the other side of the right-of-way. And that, under the TIF Act, could potentially share revenues, which is expressly provided for in the TIF Act itself. So what we have to look at is what is the plain language of the statute that they're attempting to follow in order to establish the TIF Act. And so without that requisite contiguity, which courts have held is a mandatory. Without contiguity, you cannot form a TIF district. And in this case, they clearly haven't. They rely exclusively, and their own witness's testimony relies exclusively on this small section that's not even directly contiguous to the other side of the TIF district. You have to jump over a substantial, unincorporated, excluded private right-of-way in order to have any chance of establishing contiguity. And their own witness testified that without the ability to do that, there clearly is no contiguity. And because the law doesn't allow for that jumping of the right-of-way, they clearly have failed to meet that requirement. So the legislature intended that each parcel, if they're separated in this matter, could be a TIF, but they would have to meet the requirements independently of the TIF district, and they couldn't piggyback on each other. Exactly. And if you think about it this way, the annexation statute allows for, you know, properties that are separated by a forest preserve district, a massive piece of land that could be, you know, 50 acres in size. That's not – that wouldn't be applicable to a TIF district where you have an area over here and an area way over here. The intent is not to encompass this in one massive TIF district. If both can qualify, then so be it. That's what the legislature intended. But they did not intend to include all those exceptions. And, again, reading those into the TIF Act, when the annexation statutes itself expressly state that those exceptions are only for purposes of the annexation article, it simply defies what the legislature intended when it passed both statutes. So looking at that Henry case, it tells you, you know, we have to have a substantial fiscal touching. And the appellate court correctly found that there is no substantial fiscal touching in this TIF district. And relying exclusively on the city's repeated attempts to say we annexed it, therefore it should be a TIF, it's a severely misplaced argument that should not be adopted by this court. You know, counsel indicated if they have issues with the statute or they have issues with it, they should go to the legislature when he was talking about the procedural aspects of the JRB. He said go to the legislature. Make them change it. Well, that applies the same thing to the definition of contiguity. If they don't like the definition, they shouldn't come before Your Honors and tell you to expand the scope of this definition. They should talk to their legislature. And if the legislature wants to expand the definition, that's within their prerogative. But based on the clear law on contiguity and implementation of TIF districts, they haven't met the requisite contiguity that's necessary to establish a TIF district. Opposing counsel has asked about the special concurrence. What is your position on the special concurrence? I think it's essentially the same argument. And his argument was we're not really jumping a right-of-way. We have a fee-simple-owned private property that bisects the TIF district. And, you know, whether it's a right-of-way, whatever it is, you can't jump it because you ---- But it's all right-of-way, is it not? It's all right. So it's not like there's a right-of-way that's, say, 10 feet wide but then the parcel is 30 feet wide. Correct. It is a ---- Well, I'll say this. There's a utility pipeline that runs through that right-of-way, and then there's another area that's excluded as well that's not the utility right-of-way. But what the city has relied on is this 234-foot section that abuts the right-of-way, the utility right-of-way, and they're hopping over in that section. So it is a natural gas pipeline utility right-of-way. But I don't think the concurrence changes anything. They still have to, whether it's jumping the right-of-way or whether it's do we have the contiguity because of a, you know, substantial physical touching, the argument's the same and the analysis is the same. And I touched a little bit on the argument that somehow, and this plays into the amicus filed by the IML, the court's decision in this case is not going to have any impact on any other TIF districts throughout the state. As I indicated, this is a specific situation where they have a swath of property that bisects the TIF district that's expressly excluded. It relates only to this TIF district itself. And the attempt to sway the court with potential fears about statewide concerns on invalidating TIF districts throughout the state, it's just misplaced. It's a red herring that should be disregarded. It has no applicability to the issues that are actually before the court. And the final thing I want to mention, counsel talked a little bit about the procedural aspects. The appellate court didn't need to get to this. I don't know that you do either because the contiguity issue is so clear. But the appellate court did reference and kindly referenced that the city took a casual approach towards the joint review board process and the establishment of the TIF district. I think that was a kind way of simply saying that they played fast and loose with the rules. It's clear that when the joint review board has a, rejects a TIF district, the establishment of a TIF district, there is a 30-day waiting period where they're supposed to meet and confer to try and work out any issues. They don't have to. The city is under no obligation to change anything in its TIF district. They're under no obligation to make any amendments or alterations to the original TIF plan. But they do have to wait those 30 days. And instead, they waited two weeks and approved all the ordinances without ever meeting and conferring with the joint review board. Having the attorney call an individual and say, you know, what can we do, that's not what the statute requires. That's not what the process requires. There was a duty, there was an obligation to meet and confer. They simply ignored it, passed the ordinances, and pushed ahead with the establishment of the TIF. You know, again, the legislature put this process in place for a reason. It's there for a reason. Yes, the city can approve a TIF over the rejection of the JRB, but they have to follow the procedures to do that. So it's another reason, it's another indication of how the city simply ignored the statutory rules, ignored the procedures that are in place to properly do this, and simply did what they wanted and hoped everything would work out. Counsel argued that basically it was an invalid objection. So I don't think he used the word futile, but, you know, it would be futile to me because it was not a valid objection. And, Your Honor, to be blunt, it's not their job to decide whether it's a futile objection. An objection is an objection. The statute says if there is a rejection of the TIF by the Joint Review Board, you have 30 days to meet and confer. Again, the TIF Act itself says you don't have to change a thing. You can resubmit the exact same TIF plan after those 30 days. So it allows for, hey, maybe we don't agree with the Joint Review Board. We think we have a solid plan. We're going to vote to overrule it, and the statute allows you to do that on a supermajority vote. And so that's what the procedure is. Whether they agreed with the rejection or not, they still had to follow the procedural framework to meet and confer for those 30 days before moving forward with approval of the ordinances. So absent any other questions, I appreciate your time and your consideration of the matter. Thank you, Mr. Jablonski. Mr. Hoster. Thank you. Just a couple of things in rebuttal. The question that Your Honor asked, I've got the statute in front of me, and this is what the Joint Review Board is supposed to do. They're supposed to base its recommendation to approve or disapprove the redevelopment plan and the designation of the redevelopment project area or the amendment of the redevelopment project area of the redevelopment plan, whether or not it satisfies the plan requirements, whether it satisfies the eligibility criteria, and whether it satisfies the objectives of the Act. And so those are the bases for the Joint Review Board to make recommendations. It's not a valid basis for the Joint Review Board to say, we don't like this because it's going to take money away from the school district. That's what the Act allows. And so if you look at subsection B, 65 ILCS 5-11-74.4-5, that talks all about the Joint Review Board. But that tells us what they can object to. And saying we don't like it because it takes tax money away from the school district isn't valid. I would ask the members of the panel of the Supreme Court to look at Exhibit B in our brief when you deliberate and get a chance. I'm going to hold it up. The dark area is the TIF. There is a white area here that's a triangle that is not going to be part of the TIF. But this is not a sliver. This is not point-to-point touching, which has been held to be invalid. This is a substantial chunk. And there's 234.9 feet here. You have to jump the public utility right away, but there's 234.9 feet there. This Court, Your Honorable Court, the Hawthorne Woods case, 1960, the Illinois Supreme Court said 124 feet is valid for contiguity. That's been the law. That's never been changed. It's never been reversed. Cities and municipalities rely on the Illinois Supreme Court from 1960. 124 feet is valid. When our land planner looked at this, she said 234.9 feet is more than 124 feet. We're fine. The Illinois Supreme Court told us we're fine in 1960. Mr. Jabloki has talked a little bit about, you know, following the rules. We did follow them. The city of Cresthill did follow the rules. They believed contiguity for TIF equals contiguity for annexation. The Henry Court said it's perfectly reasonable to look at annexation law to get a definition of contiguity. They're all part of the municipal code. There's really no good reason to have two different definitions of contiguity in the municipal code. I would also disagree with my opponent. I think this, you know, there's one appellate court in Illinois, and I do believe this is going to have a huge impact, especially on the city of Chicago, because anything that runs a railroad or, you know, a utility, I mean, the city of Chicago, I think, will almost be, you know, have to do one block at a time TIF districts because things are going to be separated by public utilities and things of that nature. So this is a serious issue. We're not trying to scare anybody, but we're just pointing out that, as the Illinois Municipal League said, 1,500 villages and municipalities have relied on this, thinking contiguity for TIF is contiguity for annexation, and that you can jump a public right away when you do a TIF or when you use the other development statutes. And if this third district isn't reversed, this is going to be a significant, significant impact on TIF law throughout the state of Illinois. So we respectfully would request that you reverse the third district and rule in favor of the city of Crest Hill. I thank all of you. Thank you, Mr. Hoster. Case number 126444, the Board of Education of Richmond School District number 888 versus the city of Crest Hill, will be taken under advisement as agenda number 14. Thank you very much, Mr. Hoster, for your argument and Mr. Jabloki for your argument this morning.